# EXHIBIT A

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 2 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 1 of 23

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

In re Application of

MIYA WATER PROJECTS
NETHERLANDS B.V.,

       *Applicant*,

To Obtain Discovery for Use in an
International Proceeding

Misc. Action No. _____

 

# STATEMENT OF POINTS AND AUTHORITIES
# FOR AN ORDER UNDER 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FROM
# CG/LA INFRASTRUCTURE INC. FOR USE IN AN INTERNATIONAL PROCEEDING

**WHITE & CASE**
701 Thirteenth Street N.W.
Washington, D.C. 20005

May 2, 2023

*Counsel for Applicant*
*Miya Water Projects Netherlands B.V*

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 3 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 2 of 23

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................4

    A.    Miya Is A World Leader In Water Management ....................................................4

    B.    The Water Metering Project............................................................................5

            1.    Puerto Rico's Water Infrastructure Falls Into Crisis...................................5

            2.    PRASA Develops A Plan To Fix Puerto Rico's Water Infrastructure .......6

            3.    PRASA And The P3 Authority Issue An RFP For The Water Metering Project ....................................................................................................7

            4.    Miya And IBT Are Selected As The Preferred Proponent For The RFP ... 8

            5.    The RFP Is Cancelled At The Last Minute .................................................8

    C.    The Present Application.........................................................................11

ARGUMENT ........................................................................................................12

I.    THE APPLICATION SHOULD BE GRANTED BECAUSE IT SATISFIES ALL OF THE REQUIREMENTS OF 28 U.S.C. § 1782.........................................................12

II.    DISCRETIONARY CONSIDERATIONS FURTHER COUNSEL GRANTING THE APPLICATION.......................................................................................15

CONCLUSION......................................................................................................18

i

Case 22-00172-ELG    Doc 44-1    Filed 08/15/23    Entered 08/15/23 15:21:20    Desc
Exhibit A - Statement of Points and Authorities    Page 4 of 24
Case 1:23-mc-00043    Document 1-2    Filed 05/02/23    Page 3 of 23

## TABLE OF AUTHORITIES

<u>Page(s)</u>

### CASES

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012)................................................................................................12

*Food Delivery Holding 12 S.A.R.L. v. Dewitty & Assocs. CHTD*,
    538 F. Supp. 3d 21 (D.D.C. 2021) ...................................................................................17

*HT S.R.L. v. Velasco*,
    125 F. Supp. 3d 211 (D.D.C. 2015) .................................................................................17

*In re 00 Promneftstroy*,
    134 F. Supp. 3d 789 (S.D.N.Y. 2015)..............................................................................16

*In re Application of Masters*,
    315 F. Supp. 3d 269 (D.D.C. 2018) .................................................................................13

*In re Application of Thai-Lao Lignite (Thailand) Co.*,
    821 F. Supp. 2d 289 (D.D.C. 2011) .................................................................................12

*In re Barnwell Enters. LTD*,
    265 F. Supp. 3d 1 (D.D.C. 2017) .....................................................................................17

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019).............................................................................................13

*In re DiGiulian*,
    2020 WL 5253849 (D.D.C. Sept. 3, 2020) .....................................................................13

*In re DiGiulian*,
    314 F. Supp. 3d 1 (D.D.C. 2018) ...........................................................................12, 13, 17

*In re Furstenberg Finance SAS*,
    2018 WL 3392882 (S.D.N.Y. July 12, 2018) ..................................................................14

*In re Hornbeam Corp.*,
    722 F. App'x 7 (2d Cir. 2018)....................................................................................14, 17

*In re Hulley Enter. Ltd.*,
    358 F. Supp. 3d 331 (S.D.N.Y. 2019)..............................................................................16

*In re Hulley Enters.*,
    400 F. Supp. 3d 62 (S.D.N.Y. 2019)................................................................................16

Case 22-00172-ELG    Doc 44-1    Filed 08/15/23    Entered 08/15/23 15:21:20    Desc
Exhibit A - Statement of Points and Authorities    Page 5 of 24
Case 1:23-mc-00043    Document 1-2    Filed 05/02/23    Page 4 of 23

*In re Letter of Request from the Crown Prosecution Service of the United Kingdom,*
 870 F.2d 686 (D.C. Cir. 1989) ...................................................................................13

*In re of Lucille Holdings Pte. Ltd.,*
 2022 WL 1421816 (D.D.C. May 5, 2022) ...............................................................13

*In re Top Matrix Holdings,*
 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) .............................................................14

*In re Veiga,*
 746 F. Supp. 2d 8 (D.D.C. 2010) .......................................................................15, 17

*Intel v. Advanced Micro Devices,*
 542 U.S. 241 (2004) ..........................................................................12, 13, 15, 17

*Norex Petroleum Ltd. v. Chubb Insurance Co. of Canada,*
 384 F. Supp. 2d 45 (D.D.C. 2005) ...........................................................................13

## STATUTES AND RULES

28 U.S.C. § 1782.................................................................................................. *passim*

48 U.S.C. §§ 2101–232.................................................................................................5

48 U.S.C. § 2121.........................................................................................................5

48 U.S.C. § 2141.........................................................................................................5

48 U.S.C. § 2142.........................................................................................................5

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 6 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 5 of 23

Applicant Miya Water Projects Netherlands B.V. ("**Miya**") submits this Statement of Points and Authorities in support of its Application for an Order under 28 U.S.C. § 1782 to obtain discovery from CG/LA Infrastructure Inc. ("**CG/LA**") for use in a contemplated proceeding in Dutch court.

## PRELIMINARY STATEMENT

In 2015, an estimated "99.5 percent of individuals in Puerto Rico received water from community drinking water systems that were non-compliant with the [federal Safe Drinking Water Act] because of insufficient monitoring, reporting, or drinking water quality standards." Homeland Sec. Oper'l Analysis Ctr., *Beyond Recovery: Transforming Puerto Rico's Water Sector in the Wake of Hurricanes Irma and Maria* 13 (2020) (available at https://www.rand.org/pubs/research_reports/RR2608.html) ("*Beyond Recovery*").  That same year, the Puerto Rico Aqueduct and Sewer Authority ("**PRASA**")—battered by Puerto Rico's financial and economic crisis—was given a credit rating of "CCC-minus with a negative outlook" by Standard & Poor's. *Id.* at 18.  Then, in the summer and fall of 2017, Hurricanes Irma and Maria ravaged Puerto Rico's civil infrastructure, driving PRASA's systems beyond the breaking point.  At that time, PRASA's "total outstanding debt was just over $5 billion." *Id.*

But, with the aid of new federal funding and the support of the federally created Financial Oversight and Management Board for Puerto Rico ("**FOMB**"), Puerto Rico has begun the enormous task of rebuilding its water infrastructure.  To that end, in 2018, PRASA, together with Puerto Rico's recently established Public-Private Partnership Authority ("**P3 Authority**"), launched a multi-year project to upgrade Puerto Rico's water systems with state-of-the-art smart metering technology (the "**Water Metering Project**").  These improvements would have generated revenue that PRASA desperately needs for further water infrastructure upgrades, provided water usage data to identify leaks and prioritize remediation work, and enhanced the

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 7 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 6 of 23

overall reliability and safety of the island's drinking water.

In addition to these undeniable public benefits, the Water Metering Project would also have been immensely valuable to Miya. If implemented successfully, the Water Metering Project would have meant not only tens-of-millions of dollars in profits for Miya; it would have given Miya a significant advantage in the small but highly competitive public-water-metering industry. Thus, following the announcement of the Water Metering Project, Miya and its partners in the IBT Consortium ("**IBT**") dedicated themselves to making the Water Metering Project a success. This included spending millions of dollars and devoting countless hours to developing proprietary engineering and work plans. Miya's hard work paid off and, in August 2019, PRASA and the P3 Authority designated Miya and its IBT team as the Preferred Proponent to complete the Water Metering Project. Over the next two-plus years, Miya worked with PRASA and the P3 Authority to further refine its blueprints and prepare for the launch of the much-needed upgrades.

What Miya could not have known was that, at the same time Miya was pouring its resources into ensuring the success of the Water Metering Project, members of the BLU Water Consortium—a losing bidder on the RFP—were conspiring with other entities and individuals to sabotage the project. Specifically, BLU Water Consortium member Sensus and its parent company Xylem Inc. ("**Xylem**")—together with their consultants from Moonshot Missions ("**Moonshot**") and its CEO George Hawkins—hatched a plan to have the Water Metering Project cancelled and then rebid so members of the BLU Water Consortium could get a second bite at the apple. In particular, Mr. Hawkins, who was serving as a "strategic advisor" to Xylem on the Water Metering Project, was simultaneously serving as a purported independent advisor to the FOMB in connection with the same project. Mr. Hawkins, however, never disclosed his

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 8 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 7 of 23

relationship with Xylem to the FOMB, and he and his client had a deep financial interest in seeing the Water Metering Project cancelled.  To bring about its cancellation, Moonshot and Xylem conspired to, among other things, provide the FOMB (through Mr. Hawkins) with materially false and misleading information about Miya's proposal.

At the same time, Xylem, Sensus, and fellow BLU Water Consortium partner ACEA S.p.A. ("**ACEA**") were also working in secret with an infrastructure consultant, Norman Anderson (from CG/LA).  Mr. Anderson leveraged his ties to the Puerto Rican government (including the FOMB) in order to obtain non-public, commercially sensitive information about the Water Metering Project and IBT's proposal that Xylem, Sensus, and ACEA used in their quest to have the project canceled.

Their work paid off.  Relying on the false information Moonshot, Mr. Hawkins, and their associates fed to the FOMB and others, PRASA and the P3 Authority suddenly and unexpectedly cancelled the RFP in December 2021.  As a result, Miya was stripped of its status as the Preferred Proponent and saw all of its work—which Miya had willingly shared with PRASA, the P3 Authority, and their various advisors—become seemingly worthless.

Just one month later, however, PRASA and the P3 Authority issued a "new" RFP for meter replacement solutions in Puerto Rico.  Predictably, this "new" RFP retains much of the original RFP in terms of metering.  But the new RFP omits the water-efficiency-management, advanced data processing, and improved commercial processes that were the core of Miya's proposal—i.e., the work that would have actually created the promised increase in PRASA's revenues from its new smart-meters.  Instead, predictably, the new RFP focuses on the core of Sensus's business—i.e., the provision of the smart-meters themselves—making Xylem, through Sensus, the presumptive frontrunner on the new RFP, with a corresponding windfall to Xylem,

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 9 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 8 of 23

and to Moonshot and Mr. Hawkins as Xylem's "strategic advisor."

As a result of Moonshot's, Mr. Hawkins', and Xylem's improper and tortious conduct, Miya incurred significant losses and is now contemplating bringing claims in the Netherlands against these and other co-conspirators. In light of CG/LA's role as a consultant to members of the BLU Water Consortium and given CG/LA's communications with representatives of the Puerto Rican government (including the FOMB) about the Water Metering Project, Miya believes that CG/LA holds information critical to Miya's contemplated claims in Dutch court. This Application thus seeks discovery under 28 U.S.C. § 1782 to aid Miya in those contemplated Dutch proceedings.

## FACTUAL BACKGROUND

### A.   Miya Is A World Leader In Water Management

Miya, a Dutch company, is "a world-leading efficiency oriented water operator with vast experience and a full-range offer for water utilities including water efficiency, commercial management and water treatment." Declaration of Noam Komy ("Komy Decl.") ¶¶ 2–3. Miya is a "leading expert in the field and has led some of the largest and most complicated turn-around projects in the field of water efficiency." *Id.* ¶ 3. Indeed, Miya provides "water and wastewater services across five continents through various engagement models to more than 1.5 million people." *Id.* This includes over 200 projects in Europe, the Middle East, Asia, North America, and South America, including water-efficiency projects such as:

- For the Water and Sewerage Corporation in the Bahamas;

- For Maynilad Water Services Inc. in the Philippines;

- For the National Water Commission in Jamaica;

- For Indaqua in Portugal;

- Project Boloka Metsi in South Africa;

4

Case 22-00172-ELG    Doc 44-1    Filed 08/15/23    Entered 08/15/23 15:21:20    Desc
Exhibit A - Statement of Points and Authorities    Page 10 of 24
Case 1:23-mc-00043    Document 1-2    Filed 05/02/23    Page 9 of 23

- For BBL Engenharia in Brazil;

- The Somarela Thothi water loss reduction project in Botswana; and

- The project to Reduce Valve Maintenance and Zone Sectorizing in Johannesburg.

*See id.* ¶ 4.  Because of this expertise, "Miya holds the largest accumulated know-how in Non-Revenue Water (water that is 'lost' through leakage, theft, metering inaccuracies, and other inefficiencies) projects globally."  *Id.*

      **B.**     **The Water Metering Project**

      1.     Puerto Rico's Water Infrastructure Falls Into Crisis

For years, Puerto Rico's water infrastructure has been plagued by a "legacy of system depreciation, underinvestment, lack of maintenance, and incomplete monitoring."  *Beyond Recovery* at 1.  The U.S. Environmental Protection Agency sued (and settled with) PRASA at least five times between 2000 and 2015 for violations of U.S. drinking water quality standards, including the Clean Water Act and Safe Drinking Water Act.  *See, e.g.*, https://www.justice.gov/opa/pr/settlement-united-states-puerto-rico-aqueduct-and-sewer-authority-agrees-upgrade-water. The steadily worsening financial situation in Puerto Rico, which exploded into a full blown crisis in 2014, only exacerbated these issues in Puerto Rico's water infrastructure.  *See Beyond Recovery* at 17–19.  Finally, in 2016, Congress stepped in to address the economic, financial, and governance crisis gripping the island and enacted PROMESA, Pub. L. No. 114-187, 130 Stat. 549, 48 U.S.C. §§ 2101–232.  Among other things, PROMESA established the FOMB and gave it broad powers to help Puerto Rico "achieve fiscal responsibility and access to the capital markets," including by overseeing the development of and approving Puerto Rico's fiscal plan and budgets.  48 U.S.C. §§ 2121(a), b(1), 2141, 2142.

Then, in 2017, Hurricanes Irma and Maria hit Puerto Rico, devastating Puerto Rico's water infrastructure, such as it was.  As described by the Homeland Security Operational

Case 22-00172-ELG    Doc 44-1    Filed 08/15/23    Entered 08/15/23 15:21:20    Desc
Exhibit A - Statement of Points and Authorities    Page 11 of 24
Case 1:23-mc-00043    Document 1-2    Filed 05/02/23    Page 10 of 23

Analysis Center:

> Following Hurricanes Irma and Maria, PRASA faced significant challenges to the provision and restoration of water and wastewater services.  On October 3, 2017, immediately following Hurricane Maria, **_all PRASA clients lacked drinking water_**; 40 of PRASA's 114 drinking water plants were damaged and out of service because of debris or inundation surrounding water intakes; and 800 drinking water pumping stations lacked power and were out of service.   In addition, 22 of the 51 [wastewater treatment plants] were nonoperational; three facilities were fully inundated; 222 of PRASA's 714 sanitary pumping stations were out of service and those that were functional were operating on alternative power sources; and significant damage to trunk sewers caused major sewage overflows, particularly at intersections with surface water.   Because of these outages, **_over 13.7 billion gallons of untreated wastewater were discharged into the San Juan metropolitan area_** after energy failures at PRASA [wastewater treatment plants] and wastewater pumping stations.

*Beyond Recovery* at 23 (emphasis added).

> 2.    PRASA Develops A Plan To Fix Puerto Rico's Water Infrastructure

Against this backdrop, PRASA finally decided to do something about Puerto Rico's water crisis.  In 2018, PRASA, in conjunction with the P3 Authority, announced a public-private partnership to upgrade the decades-old water metering infrastructure in Puerto Rico.  *See* Komy Decl. ¶ 5.  The plan was for the island to replace its antiquated water metering system with state-of-the-art, wireless, smart metering technology that would accurately measure water usage and aggregate and analyze that information to enable reliable revenue collection.  *See id.*  This new technology would pinpoint water leaks and provide critical analytics about infrastructure usage that would inform future investment decisions and help PRASA stem the flow of non-revenue water.  *See id*.  The project would also integrate the new metering systems with billing, collections, and customer relationship management infrastructure.  *See id.*  These three components—metering infrastructure, analytics, and customer relationship improvements—were to work in harmony to improve the customer experience and deliver hundreds of millions of dollars in revenue to PRASA that it desperately needed to fix its ailing water infrastructure.

6

Case 22-00172-ELG    Doc 44-1    Filed 08/15/23    Entered 08/15/23 15:21:20    Desc
Exhibit A - Statement of Points and Authorities    Page 12 of 24
Case 1:23-mc-00043    Document 1-2    Filed 05/02/23    Page 11 of 23

3.      PRASA And The P3 Authority Issue An RFP For The Water Metering Project

The Water Metering Project's procurement process began with a Desirability and Convenience Study published in March 2018.  *See id.* Ex. 1.  That study confirmed that the Water Metering Project would improve the daily lives of the people of Puerto Rico and the financial position of PRASA (with estimated net benefits to PRASA of $560–$650 million).  *See id.* Ex. 1 at 13–14.

Shortly after the Desirability and Convenience Study confirmed the value of the Water Metering Project, PRASA and the P3 Authority issued a Request for Qualifications ("**RFQ**") for the project in June 2018.  *See id.* ¶ 6.  Among other things, PRASA and the P3 Authority sought "more efficient metering systems, remote meter reading technology and re-engineering of its customer services."  *Id.* Ex. 2 § 1.1.  PRASA anticipated a number of benefits from the Water Metering Project, including a "significant reduction in volume of non-revenue water, protection of water resources, reduction of operating costs[,] and an increment in revenues." *Id.* ¶ 6.  Five potential bidders for the Water Metering Project responded to the RFQ and, in September 2018, the P3 Authority notified IBT and three other bidders that they had been selected to proceed to the RFP stage.  *See id.* ¶ 7.  Among the other proponents selected to advance to the RFP stage was the BLU Water Consortium, which included Sensus, a subsidiary of Xylem that produces smart-meters.  *Id.*

On September 26, 2018, PRASA and the P3 Authority officially issued the RFP.  *See id.* ¶¶ 7–8.  And, in January 2019, Miya, with IBT, submitted its Indicative Response to the RFP. *See id.*  Shortly thereafter, on February 15, 2019, the P3 Authority and PRASA notified the IBT team that it and BLU Water (including Sensus) had been selected as the two final proponents for the RFP.  *See id.* ¶ 8.  IBT and BLU Water were then given several months to complete a final proposal.  On July 17, 2019, Miya and IBT submitted their final 394-page RFP response

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 13 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 12 of 23

containing extensive strategic and financial analysis, transition plans, risk management plans, pricing proposals, contingency plans, and quality assurance processes. See *id.* ¶ 9.

4. <u>Miya And IBT Are Selected As The Preferred Proponent For The RFP</u>

On August 12, 2019, the P3 Authority notified Miya and the IBT team that it had been chosen as the "Preferred Proponent" for the Water Metering Project. *See id.* ¶ 10, Ex. 4. Relying on that notification, Miya, as a leader of the IBT team, devoted significant resources and incurred extensive direct costs that were necessary to advance the Water Metering Project, including by:

- Responding to 398 separate Requests for Clarification from PRASA and the P3 Authority;

- Revising the project plan and preparing a contingency plan in response to the COVID-19 pandemic;

- Spending hundreds of hours negotiating and renegotiating the draft P3 Agreement in response to changes requested by the P3 Authority and PRASA;

- Securing, renegotiating, and extending a funding commitment from J.P. Morgan Chase Bank, expending "a tremendous amount of effort" in the process;

- Identifying, negotiating, and contracting with equipment suppliers, contractors, technology vendors, and strategic advisors; and

- Retaining multiple legal advisors, including White & Case LLP, Hunton Andrews Kurth LLP, McConnell Valdez LLC, and several others. *See id.* ¶ 11.

In all, Miya spent countless hours and incurred more than $2 million in direct expenses after having been chosen as the Preferred Proponent for the Water Metering Project. *Id.* ¶ 12. And Miya declined other lucrative opportunities to preserve its human capital and resources for the Water Metering Project. *See id.*

5. <u>The RFP Is Cancelled At The Last Minute</u>

On information and belief, following the selection of Miya and IBT as the Preferred Proponent, Moonshot, Mr. Hawkins, and Xylem—who, through Sensus, had lost the RFP as part

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 14 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 13 of 23

of the BLU Water Consortium—hatched a scheme to get the RFP cancelled and reissued on terms more favorable to Sensus.  To that end, in May 2020, Mr. Hawkins—a "Strategic Advisor to the Board of Directors of Xylem"—became a purported "independent" advisor to the FOMB through his nonprofit collective of water sector professionals, Moonshot.  *Id.* ¶ 14.  Initially offering his services without seeking compensation, Mr. Hawkins, through Moonshot, was retained to "assist [the FOMB] in connection with matters relating to implementation and monitoring for [PRASA's] current and future fiscal plans."  *Id.* Ex. 5 at 9.

Prior to retaining Moonshot, the FOMB required Mr. Hawkins to complete a "Conflict of Interest Disclosure Certification" and "Contractor Certification."  *Id.* Ex. 5 at 16–20, 116–18.  Mr. Hawkins knowingly and falsely certified that he had no conflicts of interest and "no person" had influenced him in connection with his contract with the FOMB in hopes of "securing any advantages, privileges or favors for the benefit of such person," such as "the written or unwritten promise of a gift, favor, or other monetary or non-monetary benefit."  *Id.* Ex. 5 at 116.  Specifically, Mr. Hawkins intentionally and wrongfully failed to disclose to the FOMB that he had direct financial ties to Xylem and, therefore, Sensus, the losing bidder on the RFP, and that he was offering to work for the FOMB without compensation in hopes of wrongfully securing a lucrative opportunity for Xylem (i.e., the re-issued RFP).   Upon information and belief, Moonshot, Mr. Hawkins, Xylem, Sensus, and others then engaged in a concerted and coordinated effort to abuse Mr. Hawkins' position of trust to prevent the conclusion of a final agreement with Miya for the Water Metering Project and to induce the cancellation of the RFP.  To achieve that shared, wrongful purpose—once Mr. Hawkins had fraudulently obtained his position as a purportedly independent advisor to the FOMB—Mr. Hawkins worked to convince the FOMB to recommend the cancellation of the RFP.  *See* Komy Decl. ¶ 18.

Case 22-00172-ELG    Doc 44-1    Filed 08/15/23    Entered 08/15/23 15:21:20    Desc
Exhibit A - Statement of Points and Authorities    Page 15 of 24
Case 1:23-mc-00043    Document 1-2    Filed 05/02/23    Page 14 of 23

Meanwhile, Xylem, Sensus, and ACEA relied upon an infrastructure consultant, Norman Anderson (the then-CEO of CG/LA), to leverage his deep ties to the Puerto Rican government in order to obtain non-public and commercially sensitive information about the Water Metering Project and to sow false and misleading information about IBT's proposal. *See id.* For example, after Miya and the IBT team were designated as the Preferred Proponent, Mr. Anderson advised Xylem to contest the award and to apply counter-pressure on the Puerto Rican government to ensure that the RFP would not be awarded to Miya and that an alternative project could be developed. To that end, on or around August 14, 2020, Mr. Anderson spoke with the then-Liaison to the FOMB for the Puerto Rican Governor about the IBT bid in order to keep the door open for Xylem by falsely asserting that IBT had submitted an illegal bid.

The pressure campaign led by Mr. Anderson and Mr. Hawkins—acting on behalf of Xylem and Sensus and others—worked. In October 2021, relying on Mr. Hawkins' self-serving advice and the lies sowed by Mr. Anderson, the FOMB recommended to the P3 Authority that it cancel the RFP. *Id.* Ex. 6 at 12 (explaining that "*Based on advice from their advisors*, the FOMB communicated that they would not recommend the approval of the [Water Metering Project] as structured" (emphasis added)). Given the FOMB's immense power in Puerto Rico, the P3 Authority naturally complied and, on December 2, 2021, cancelled the RFP. *See id.* Ex. 7.

Shortly thereafter, and just as Mr. Hawkins, Moonshot, Xylem, and their co-conspirators hoped, PRASA and the P3 Authority issued a "new" RFP for a project to replace Puerto Rico's water metering system. This new RFP retains the core water metering requirements of the original RFP but omits from the scope of work the water-metering-efficiency, advanced analytics, and commercial process improvements for which Miya is the world leader. *See id.* ¶ 16. I.e., the new RFP omits the work of turning the data generated by PRASA's newly

10

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 16 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 15 of 23

acquired smart meters into increased revenues. *Id.* As a result, the new RFP—issued without a new desirability and convenience study—is focused on the purchase and installation of meters, such as those produced by Sensus, which will generate wasted data, rendering the meters "smart" in name only. *Id.* Unsurprisingly, Xylem, through Sensus, is one of the bidders on the "new" RFP and is on the cusp of being selected as the winner for the project, which is expected to begin in September 2023. *Id.* ¶ 17.

### C.     The Present Application

In light of the foregoing, Miya, a Dutch entity, is contemplating proceedings in the Netherlands against Moonshot, Mr. Hawkins, Xylem, and potentially others for tort claims arising under Dutch law over which Dutch courts may exercise jurisdiction. *See* Declaration of Davine C. Roessingh ("Roessingh Decl.") § 4. Specifically, Moonshot, Mr. Hawkins, and Xylem have violated their duties of care and/or generally-accepted "soft law obligations" recognized under Dutch law by intentionally and wrongfully causing PRASA and the P3 Authority to cancel the RFP. *Id.* § 4.1. These wrongful and tortious acts caused direct and concrete injuries to Miya, including, but not limited to, legal fees, financial advisory fees, and commitment fees, all of which were primarily paid from Miya's Dutch bank account. Komy Decl. ¶ 11; Roessingh Decl. § 4.1–2. Dutch courts may exercise jurisdiction over these claims because Miya incurred these direct losses in the Netherlands and because additional circumstances point to the Netherlands as the most appropriate forum. Roessingh Decl. § 4.2.

Given that CG/LA and its former CEO Norman Anderson acted as consultants to Xylem during the original RFP and directly advised Xylem in its efforts to cancel the original RFP, Miya believes that CG/LA holds information directly relevant and necessary for Miya's contemplated Dutch claims.

Accordingly, Miya seeks to obtain limited document discovery from CG/LA (Lee Decl.

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 17 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 16 of 23

Ex. A).

## ARGUMENT

The Court should grant Miya's Application because it satisfies all of the statutory requirements of 28 U.S.C. § 1782, as well as the discretionary factors set forth by the Supreme Court in *Intel v. Advanced Micro Devices*, 542 U.S. 241, 264–65 (2004). *See In re DiGiulian*, 314 F. Supp. 3d 1, 9 (D.D.C. 2018) (granting § 1782 application where statutory requirements were met and discretionary factors weighed in favor of applicant).

**I.    THE APPLICATION SHOULD BE GRANTED BECAUSE IT SATISFIES ALL OF THE REQUIREMENTS OF 28 U.S.C. § 1782**

Title 28 U.S.C. § 1782, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," states in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). As courts in this District have explained, this language encompasses two primary aims: (1) "'providing efficient assistance to participants in international litigation" and (2) "encouraging foreign countries by example to provide similar means of assistance to [U.S.] courts.'" *In re Application of Thai-Lao Lignite (Thailand) Co.*, 821 F. Supp. 2d 289, 293 (D.D.C. 2011); *see also Intel*, 542 U.S. at 247 ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."). Further to these aims, "the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). Miya's discovery requests satisfy all of the requirements of § 1782.

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 18 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 17 of 23

*First*, CG/LA "resides or is found" in the District of Columbia, as demonstrated by the location of its headquarters at 729 15th St NW, Suite 900, Washington, DC 20005. *See Lee Decl. Ex. B* (reflecting address of CG/LA's headquarters); *see also In re Application of Masters*, 315 F. Supp. 3d 269, 274 (D.D.C. 2018) (noting that courts generally agree a corporation is "found" in a district where it is headquartered or incorporated); *In re BMW AG*, 2022 WL 2817215, at *4 (S.D.N.Y. July 19, 2022) ("A person or entity 'resides or is found' in a district when it is subject to personal jurisdiction within that district." (citing *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019)). Accordingly, the Court may order discovery from CG/LA.

*Second*, the requested discovery is "for use in" the contemplated Dutch proceeding (*see* Komy Decl. ¶ 18; Roessingh Decl. §§ 4–5), which constitutes a "proceeding in a foreign or international tribunal" under § 1782. *See, e.g.*, *Norex Petroleum Ltd. v. Chubb Insurance Co. of Canada*, 384 F. Supp. 2d 45 (D.D.C. 2005) (finding statutory requirements met when discovery was in aid of Canadian court proceeding); *In re DiGiulian*, 2020 WL 5253849, at *3 (D.D.C. Sept. 3, 2020) (finding statutory requirement met for Quebec Superior Court proceeding).

In *Intel*, the Supreme Court held that there is no requirement that the foreign proceeding be initiated to meet the statutory requirements for § 1782, only that such proceeding be "within reasonable contemplation." 542 U.S. at 259; *see also In re DiGiulian*, 314 F. Supp. 3d at 6 ("Section 1782 does not require proceedings to be 'pending' or 'imminent,' and permits courts to authorize discovery provided that the foreign proceedings are 'within reasonable contemplation' when the request for judicial assistance is filed."). As such, a § 1782 applicant is required only to show that there are "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *In re Letter of Request from the Crown Prosecution Service of the United Kingdom,* 870 F.2d 686, 692 (D.C. Cir. 1989); *see also In re of Lucille Holdings Pte.*

13

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 19 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 18 of 23

*Ltd.*, 2022 WL 1421816, at *17 n.21 (D.D.C. May 5, 2022) ("[T]he goal of efficiency is served by a rule that section 1782 applicant must, at the time of its application, demonstrate through sufficiently specific and detailed objective indicia . . . that proceedings in a foreign or international tribunal will be initiated within a reasonable time.").

As demonstrated above and in the accompanying declaration, the contemplated Dutch proceedings more than satisfy this standard. Miya's Dutch counsel has provided this Court with a detailed declaration describing the claims Miya anticipates pursuing in Dutch court and the grounds upon which it may do so. Roessingh Decl. § 4. Numerous courts have found such evidence sufficient proof that the anticipated foreign proceeding is "reasonably contemplated" and "non-speculative." *See In re Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018) (finding statements that represented applicants' intent to litigate and "articulated a theory on which it intended to litigate" provided sufficiently concrete basis); *In re Furstenberg Finance SAS*, 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (finding sworn statement that applicants intended to file criminal complaint that "articulated a specific legal theory on which they intend to rely" met the statutory requirement); *In re Top Matrix Holdings*, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) (finding sworn declaration met the statutory requirement where it "describ[ed] the legal theories on which it plan[ned] to rely [and] demonstrat[ed] its intent to initiate litigation").

In this case, Miya's Dutch counsel has plainly described "the legal theories on which it plans to rely," which meets Miya's burden of demonstrating the foreign proceeding is "within reasonable contemplation." Moreover, the requested discovery is "for use in" the reasonably contemplated Dutch proceeding(s) between Miya, on the one hand, and Moonshot, Mr. Hawkins, Xylem, and their co-conspirators, on the other hand, and thus meets the "foreign or international tribunal" requirement. *See* Komy Decl. ¶ 18; Roessingh Decl. §§ 4–5.

14

Case 22-00172-ELG    Doc 44-1    Filed 08/15/23    Entered 08/15/23 15:21:20    Desc
Exhibit A - Statement of Points and Authorities    Page 20 of 24
Case 1:23-mc-00043    Document 1-2    Filed 05/02/23    Page 19 of 23

***Third***, Miya is an "interested person" within the meaning of § 1782 because it is an expected plaintiff in the contemplated foreign proceeding, and, therefore, has a clear interest in the proceeding and the evidence available for use therein. *See, e.g.*, *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.") (alteration in original).

## II.    DISCRETIONARY CONSIDERATIONS FURTHER COUNSEL GRANTING THE APPLICATION

Where, as here, the statutory requirements of § 1782 are met, the Court "may order" the requested discovery. 28 U.S.C. § 1782. In *Intel*, the Supreme Court enumerated several discretionary factors that "bear consideration in ruling on a § 1782(a) request":

> (1) whether the persons from whom the discovery is being sought are participants in the foreign proceeding;
>
> (2) the nature and character of the foreign proceeding and the receptivity of the foreign tribunal to U.S. federal court judicial assistance;
>
> (3) whether the request is an attempt to circumvent foreign proof gathering limitations; and
>
> (4) whether the discovery sought is unduly burdensome.

542 U.S. at 264–65; *see also In re Veiga*, 746 F. Supp. 2d 8, 8 (D.D.C. 2010) (citing *Intel* factors). Here, all of the discretionary factors weigh in favor of granting the Application.

***First***, CG/LA is not an anticipated defendant in the foreign proceeding. Thus, the requested discovery will not be available in the foreign proceeding. In *Intel*, the Supreme Court found that assistance under § 1782 is particularly warranted where discovery is sought from parties that are not participants in the international proceeding. *Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 21 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 20 of 23

Here, under Dutch law, there is no general right of access to documents in the possession or control of others, especially with regard to non-parties.  Roessingh Decl. § 6.  There is a limited mechanism in Dutch law, "Article 843a DCCP," that provides for pre-litigation discovery from potential counterparties and third parties, but that mechanism is not likely to apply here.  *Id.*  For instance, Article 843a DCCP requires that a party seeking discovery precisely identify which documents in the party's possession support its claim—something Miya is unable to do.  *Id.* ¶¶ 39–40.  Moreover, CG/LA is not domiciled in the Netherlands, and it is unlikely that the information requested is present in the Netherlands, an additional fact that cuts against a Dutch court's exercise of jurisdiction in pre-litigation discovery.  *Id.* ¶ 38.  Thus, "the type of discovery as envisaged by Miya through 1782 Proceedings cannot be obtained in Dutch courts" (*id.* ¶ 44) and without this Court's assistance, Miya will have no other means to obtain the information it seeks.

***Second***, the Dutch court can be expected to be receptive to information obtained by this Application.  As district courts have recognized, "Dutch law permits the submission of evidence collected through section 1782," and such courts are generally receptive to evidence obtained through § 1782 proceedings.  *In re Hulley Enter. Ltd.*, 358 F. Supp. 3d 331, 347 (S.D.N.Y. 2019), *R. & R. adopted by*, 400 F. Supp. 3d 62 (S.D.N.Y. 2019); *see also In re OO Promneftstroy*, 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015) (same).  Likewise, under Dutch procedural law, Miya has the right to submit evidence in any form not expressly prohibited by law, and there are no Dutch rules of discovery or privilege of which Miya's Dutch counsel is aware that would prevent Miya from obtaining or relying on the requested discovery.  Roessingh Decl. ¶ 31.  In fact, Dutch courts have admitted evidence obtained through § 1782 proceedings in the past, and experts on Dutch law agree that such discovery is admissible in Dutch proceedings.  *Id.* ¶ 32.

Case 22-00172-ELG    Doc 44-1    Filed 08/15/23    Entered 08/15/23 15:21:20    Desc
Exhibit A - Statement of Points and Authorities    Page 22 of 24
Case 1:23-mc-00043    Document 1-2    Filed 05/02/23    Page 21 of 23

In any event, this second *Intel* factor can only weigh against ordering discovery if there is authoritative proof that the Dutch court would reject the evidence Miya seeks. Specifically, courts in this District have applied the general approach that, in the absence of a foreign court's clear rejection of the assistance, the § 1782 application should be granted. *See In re Veiga*, 746 F. Supp. 2d at 20 ("The party resisting discovery must point to 'authoritative proof' that the foreign tribunal would reject the evidence sought."); *see also Food Delivery Holding 12 S.A.R.L. v. Dewitty & Assocs. CHTD*, 538 F. Supp. 3d 21, 30 (D.D.C. 2021) (same); *In re Barnwell Enters. LTD*, 265 F. Supp. 3d 1, 11 (D.D.C. 2017) ("[P]roof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery."); *In re DiGiulian*, 314 F. Supp. 3d at 8 (same). In this case, there is no indication (let alone proof) that a Dutch court would reject the requested evidence.

***Third***, for the same reasons, Miya is not attempting to circumvent any applicable proof-gathering limitations in the Dutch proceedings. *Intel*, 542 U.S. at 264–65. As described above, there do not appear to be applicable discovery mechanisms available to Miya in the Dutch proceeding. Roessingh Decl. § 5. Miya, in good faith, seeks the discovery of information from CG/LA to support its claims in the contemplated foreign proceeding. Circuit courts have found that such discovery is warranted. *See In re Hornbeam Corp.*, 722 F. App'x 7, 9–10 (2d Cir. 2018). In any event, § 1782 does not require that the information sought be discoverable under the procedures of the foreign tribunal. *See, e.g.*, *Intel*, 542 U.S. at 259–64 (clarifying that § 1782 contains no "foreign-discoverability" prerequisite); *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 225 (D.D.C. 2015) (vacated on other grounds) ("It is irrelevant if the material sought is not discoverable in the foreign tribunal because 28 U.S.C. § 1782(a) does not impose a foreign-discoverability requirement.").

17

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 23 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 22 of 23

*Fourth*, the discovery sought is not unduly burdensome.  Miya seeks only information that is directly relevant to its contemplated claims in the Dutch proceeding concerning the cancelled RFP.  The proposed document requests in the subpoena are narrowly tailored to obtain information from CG/LA that relates to the concerted effort to cancel the RFP by people and entities who communicated with CG/LA regarding that subject.  *See generally* Lee Decl. Ex. A. This information is critical to Miya's contemplated claims.  To the extent that Miya's Application imposes any burden on CG/LA, that burden would be minimal, as the requested documents should be readily available in electronic or hard-copy files, and any incidental burden imposed is outweighed by the central importance of the requested information to the contemplated Dutch proceedings.

## CONCLUSION

For the foregoing reasons, Miya respectfully requests that the Court grant its Application for an Order under 28 U.S.C. § 1782 to obtain discovery from CG/LA, and grant Miya leave to serve the subpoena attached as Exhibit A to the Lee Declaration.

Case 22-00172-ELG   Doc 44-1   Filed 08/15/23   Entered 08/15/23 15:21:20   Desc
Exhibit A - Statement of Points and Authorities   Page 24 of 24
Case 1:23-mc-00043   Document 1-2   Filed 05/02/23   Page 23 of 23

Dated:  May 2, 2023                          Respectfully submitted,

Tara M. Lee (DC Bar No. 1024533)
Scott E. Lerner (DC Bar No. 1024964)
Blair E. Trahan (DC Bar No. 90006799)
WHITE & CASE LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005
Phone: (202) 626-3600
Fax:     (202) 639-9355
tara.lee@whitecase.com
scott.lerner@whitecase.com
blair.trahan@whitecase.com

*Counsel for Applicant*
*Miya Water Projects Netherlands B.V.*